UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:15-CV-62065-WJZ

CHRISTINE D'ONOFRIO,

       Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

       Defendant.

_____/

**DEFENDANT'S RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW UNDER RULE 50(b) AND INCORPORATED
MEMORANDUM OF LAW**

       Defendant Costco Wholesale Corporation ("Costco"), pursuant to Federal Rule of Civil Procedure 50(b), hereby renews its Rule 50(a) Motion for Entry of Judgment as a Matter of Law.[1] For the reasons set forth below, Costco's Motion should be granted.[2]

**I.    INTRODUCTION**

       Judgment as a matter of law for Costco is appropriate because Plaintiff Christine D'Onofrio ("Plaintiff") failed to carry her burden of proof at trial to show that Costco violated the Florida Civil Rights Act ("FCRA") by failing to accommodate her disability. Specifically, Plaintiff failed to establish by a preponderance of the evidence that, after December 9, 2012, she made a specific request for a reasonable accommodation, that she needed any accommodation to

---

[1] Concurrent with this Motion, Costco is also filing its Motion for a New Trial and/or for Remittitur pursuant to Federal Rule of Civil Procedure 59.

[2] The format for citations to the trial transcripts shall be as follows: Transcript (Tr.), Volume (Vol.) and Volume Number (____), followed by the Page and Line Number (__:___). Joint Exhibits shall be referred to as "JX." Defendant's Exhibits shall be referred to as "DX." And Plaintiff's Exhibits shall be referred to as "PX."

perform the essential functions of her job, or that Costco refused to provide her with a reasonable accommodation.

In addition, because Plaintiff cannot prevail on her failure to accommodate claim, she is not entitled to an award of compensatory or punitive damages. At a minimum, Plaintiff failed to present any evidence at trial to support her award of punitive damages. Because Plaintiff failed to present evidence at trial that was legally sufficient to permit a reasonable jury to find in her favor on her failure to accommodate claim, Costco is renewing its Rule 50(a) Motion made at trial, and is entitled to judgment as a matter of law under Rule 50(b).

## II.   PROCEDURAL BACKGROUND

This Court presided over a nine-day jury trial, from May 29 through June 11, 2018, after which the jury found in favor of Plaintiff on her failure to accommodate claim and awarded Plaintiff $750,000.00 in compensatory damages and $25,000.00 in punitive damages. At the close of Plaintiff's case, Costco submitted its Motion for Judgment as Matter of Law under Rule 50(a) (Tr. Vol. VI at 179), and it later renewed the Motion at the close of all the evidence (Tr. Vol. VII at 212). On each occasion, the Court denied Costco's Motion. However, as provided in Rule 50(b), "if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Accordingly, Costco now renews that Motion as to Plaintiff's failure to accommodate claim because the manifest weight of the evidence does not support the jury's verdict or its award of damages against Costco on that claim.

## III.   STANDARD FOR ENTRY OF JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50 provides for the entry of judgment as a matter of law on any issue if "a reasonable jury would not have a legally sufficient evidentiary basis to find for

the [nonmoving] party on that issue." Fed. R. Civ. P. 50(a)(1). A party who, before the case was submitted to the jury, filed a motion for judgment as a matter of law under subsection (a) of Fed. R. Civ. P. 50 may, no later than 28 days after the entry of judgment, file a renewed motion for judgment as a matter of law under subsection (b) of Fed. R. Civ. P. 50. "In ruling on the renewed motion, the [C]ourt may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

When faced with a Rule 50 motion, the question before the Court is whether the "evidence [on the record] is 'legally sufficient to find for the [nonmoving] party on that issue.'" *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). Thus, the motion should be granted "when there is no legally sufficient evidentiary basis for a reasonable jury to find for the [nonmoving] party on that issue." *Id*. (citation omitted). As set forth in Costco's Rule 50(a) Motion, Plaintiff presented insufficient evidence for a reasonable jury to find that Costco violated the FCRA by refusing to provide Plaintiff with a reasonable accommodation. The paucity of evidence likewise makes manifest the conclusion that Plaintiff also presented insufficient evidence to support the award of punitive damages against Costco.

### IV.   ARGUMENT

#### A.   Legal Standard for a Failure to Accommodate Claim Under the FCRA

Disability discrimination claims under the FCRA are analyzed using the same framework as ADA claims. *See Sicilia v. UPS, Inc.*, 279 F. App'x 936, 938 (11th Cir. 2008) (per curiam). Thus, to prevail on her failure to accommodate claim, Plaintiff must show by a preponderance of the evidence: (1) that she was a qualified individual with a disability; (2) that she made a specific request for a reasonable accommodation; and (3) that Costco failed to provide a reasonable

- 3 -

accommodation, or engage in the interactive process to identify a reasonable accommodation. *See id.*; *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam); *Gilliard v. Ga. Dep't of Corrs.*, 500 F. App'x 860, 868 (11th Cir. 2012) (per curiam); *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998); *Howard v. Steris Corp.*, 886 F. Supp. 2d 1279, 1291 (M.D. Ala. 2012), *aff'd*, 550 F. App'x 748 (11th Cir. 2013). An employer is not liable under the ADA if the employee causes the breakdown in the interactive process. *Gilliard*, 500 F. App'x at 868.

Even if an employee is disabled, an employer has no obligation to make any accommodations unless and until the employee specifically requests an accommodation. *See Gaston*, 167 F.3d at 1363 ("the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made"). Thus, the burden is on the employee to suggest to the employer both the need for an accommodation and the reasonable accommodations she believes the employer should provide. *See Bagwell v. Morgan Cty. Comm'n*, No. 5:14-cv-00464-CLS, 2015 WL 13307343, at *9 (N.D. Ala. Oct. 28, 2015) ("The [defendant] was not responsible for exploring accommodations not suggested by plaintiff … the ADA provides no cause of action for an employer's failure to investigate possible accommodations.") (citation omitted), *aff'd*, 676 F. App'x 863 (11th Cir. 2017); *Mears v. Gulfstream Aerospace Corp.*, 905 F. Supp. 1075, 1080 (S.D. Ga. 1995) (no liability for failure to accommodate because "there is no indication that [p]laintiff suggested this accommodation [to the employer] while she was still … employed"), *aff'd*, 87 F.3d 1331 (11th Cir. 1996). Also, an employer is not required to accommodate an employee in any manner in which the employee desires. *Gilliard*, 500 F. App'x at 868. The employer need only provide the employee with a reasonable accommodation, not the employee's preferred accommodation. *Stewart v. Happy*

*Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) ("[A]n employee is entitled only to a reasonable accommodation and not to a preferred accommodation. ... Stated plainly, under the ADA a qualified individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation.") (citations omitted).

Importantly, if an employee does not need an accommodation to perform her essential job functions, then the employer is under no obligation to make any accommodation at all, even if the employee requests an accommodation that is reasonable and easily provided. *See Albright v. Columbia Cty. Bd. of Educ.*, 135 F. App'x 344, 346 (11th Cir. 2005) (per curiam) ("[T]he record clearly shows that [plaintiff] did not require an accommodation to perform her job. It is undisputed that [plaintiff] performed her bus driving duties without an accommodation[.]") *Moore v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 544 F. Supp. 2d 1291, 1305 (M.D. Fla. 2008) ("Plaintiff admits that she could perform her job without any accommodation. ... If an accommodation is not needed, the question of 'reasonableness' does not arise.") (citation omitted); *Beatty v. Hudco Indus. Prods., Inc.*, 881 F. Supp. 2d 1344, 1356 (N.D. Ala. 2012) ("Beatty's claim for reasonable accommodation fails for the simple reason that she did not need an accommodation. ... Beatty testified throughout her deposition that she could perform all of the essential functions of her job without accommodation[.]"); *Batson v. Salvation Army*, No. 3:14-cv-00031-TCB-RGV, 2016 WL 4728112, at *9 n.27 (N.D. Ga. Jan. 8, 2016) ("Batson's accommodation claim also fails because she did not need an accommodation as Batson concedes that it is undisputed that she was able to perform the essential functions of her job with or without an accommodation."); *Sheets v. Fla. E. Coast Ry. Co.*, 132 F. Supp. 2d 1031, 1035 (S.D. Fla. 2001) (no accommodation required under the ADA where plaintiff performed essential functions of job with or without accommodation).

Finally, just because an employer may have provided accommodations voluntarily in the past, this does not require the employer to continue providing the accommodations. An employer is allowed to discontinue accommodations it previously provided to an employee when those accommodations exceed what is required by the ADA. *See Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997) ("It is equally apparent, however, that the [City's] previous accommodation may have exceeded that which the law requires. ... [W]e cannot say that [its] decision to cease making those accommodations that pertained to the essential functions of Holbrook's job was violative of the ADA."); *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1365 (S.D. Fla. 1999) ("The City's decision to cease the accommodations ... did not violate the ADA, because [its] original accommodations exceeded the level that the law requires."); *Sheets*, 132 F. Supp. 2d at 1035 ("where employer provided accommodations that exceeded those required under the ADA, 'a decision to discontinue accommodations does not give rise to liability for failure to reasonably accommodate.'") (citation omitted).

### B. There Is Insufficient Evidence In The Record to Permit A Reasonable Jury To Find For Plaintiff On Her Failure to Accommodate Claim.

In this case, the evidence on the record is insufficient to permit a reasonable jury to find for Plaintiff on her failure to accommodate claim under the FCRA. At trial, Plaintiff was required to prove by a preponderance of the evidence that, after December 9, 2012, (1) she needed an accommodation to perform her essential job functions; (2) she requested a specific accommodation from Costco; (3) the accommodation she requested was reasonable; and (4) Costco failed to provide an accommodation. *Sicilia*, 279 F. App'x at 938; *Gaston*, 167 F.3d at 1363; *Gilliard*, 500 F. App'x at 868; *Terrell*, 132 F.3d at 624; *Howard*, 886 F. Supp. 2d at 1291; *Albright*, 135 F. App'x at 345. Plaintiff failed to meet her burden as to any of these essential elements of her claim.

### *1. Plaintiff Did Not Need Any Accommodations to Perform Her Essential Job Functions.*

First, there is no evidence in the record that Plaintiff needed an accommodation to perform her essential job functions. Plaintiff, who is deaf, worked at Costco for 23 years, including more than ten years in her last position as a stocker. By her own admission, Plaintiff successfully performed her job during most, if not all, of that time without any accommodations at all, and, by her own admission, she never had any problems communicating with her managers and co-workers until 2012, when she began working for Alan Pack, the then newly-appointed General Manager at the Pompano Beach warehouse. Specifically, Plaintiff testified as follows about her 14 years working at Costco's Davie, Florida warehouse before she transferred to the Pompano Beach location:

- She worked under 15 to 20 managers during her time at Davie. (Tr. Vol. II. at 10:23-11:1.)

- She did not have any issues with communication with any of the managers she worked under in Davie. (*Id.* at 11:2-5.)

- At Davie, she was very happy. She got along very well with her co-workers and her managers. She had no issues with communication. Her performance was great. (*Id.* at 12:1-5.)

- She never filed any complaints with HR about any communication issues with managers at Davie. (*Id.* at 12:6-9.)

Plaintiff transferred to Costco's Pompano Beach warehouse in 2003. Between 2003 and 2011, Plaintiff admitted that she performed her job at Pompano with no issues, had no ***"issues with managers involving communication,"*** and ***"was able to communicate with managers and co-workers effectively and successfully."*** (*Id.* at 22:19-23, 25:5-7, 24-25) (emphasis added). Indeed, Plaintiff introduced at trial numerous performance evaluations that show that, prior to 2012, both she and her managers assigned her very high marks for her communication skills. (Tr. Vol. III at 67:7-79:10; PX 20-23.) According to Plaintiff, as of "June 2011," she "was very

happy" with her employment at Costco and she "was able to communicate successfully with managers and coworkers." (Tr. Vol. II at 25:20-25.)

In the late summer of 2012, Pack became the General Manager of the Pompano Beach warehouse. On November 20, 2012, Plaintiff wrote a letter to Costco's Chief Executive Officer ("CEO"), Craig Jelinek, in which she complained that she was having issues communicating with Pack because he "mumble[s]." (Tr. Vol. II at 38:7-16; JX 31.) In that letter, Plaintiff also stated "*[a]s a born deaf person, I have always been able to communicate with my managers. I am a lip reader and can speak very well.*" (Tr. Vol. II at 38:20-21; JX 31) (emphasis added). Indeed, Plaintiff, at trial, reiterated that she has "always been able to communicate with all of [her] managers." (Tr. Vol. II at 38:20-21.) As described in more detail below, in response to Plaintiff's letter, Costco representatives met with Plaintiff to discuss her concerns. Plaintiff concedes that, at that meeting, she suggested no specific accommodations to improve the communication with Pack apart from transferring him to another warehouse. (*Id.* at 40:20-25, 149:20-150:8.) Nevertheless, following the meeting, Costco installed Video Remote Interpreting ("VRI") equipment in two locations at the Pompano Beach location where Plaintiff worked and subscribed to a VRI service, which utilizes remote online sign language interpreters who can be called on a video phone to facilitate communication between a deaf individual and a hearing individual, who are both together on the other end of the call. (*Id.* at 151:24-152:2, 152:21-153:4.) Costco suggested that the VRI equipment would enable Plaintiff to communicate more effectively with Pack (and other managers) by interposing a qualified interpreter between them. (Tr. Vol. V at 221:10-17.)

Plaintiff initially considered the installation of the VRI equipment to be positive and "good." (Tr. Vol. II at 53:23-25, 60:1-4.) However, as Plaintiff admits, she frequently refused to

- 8 -

utilize the VRI during coaching and counseling sessions with both Pack and other managers.  (Tr. Vol. III at 13:12-17, 42:12-14; Tr. Vol. VII at 25:9-13, 35:19-21, 40:5-7, 163:7-17, 166:10-14.) With regard to using the VRI, Plaintiff testified that *she never had a communication issue*, that *she did not need the VRI because she "could communicate*," and that *she never asked for the VRI equipment*. (Tr. Vol. III at 13:12-17, 46:11-20; Tr. Vol. II at 75:1-5) (emphasis added).  As Plaintiff herself admitted, when asked to use the VRI, she responded *"why is everybody making such an issue about the VRI.  I don't [need] it.  There is no communication issue.  Just talk to me."* (Tr. Vol. II at 75:3-5) (emphasis added).  Plaintiff also testified that when Costco set up the VRI, she started *"thinking, I don't have a communication problem, what do we need this for*[?]" (*Id.* at 68:12-13) (emphasis added).  On several occasions, Plaintiff even unilaterally turned off or attempted to turn off the VRI phone during counseling or coaching sessions with her managers.  (*Id.* at 81:12-19; Tr. Vol. III at 42:12-14; Tr. Vol. VII at 25:9-13, 35:19-21, 166:10-14.)

Interestingly, while Plaintiff's only concern was "communication issues" with Pack, she testified that on a day-to-day basis, she had essentially no need to communicate with Pack.  (Tr. Vol. II at 65:3-5.)  Thus, Plaintiff failed to establish by a preponderance of the evidence that she required any accommodations to perform her essential job functions.  Consequently, Costco had no duty to provide any accommodations to Plaintiff under the FCRA.  *See Sheets*, 132 F. Supp. 2d at 1035 ("Plaintiff can perform the essential functions of his job ... with or without accommodation.  He has not alleged an inability to perform his job. ...  He could and *did* work, without accommodation, until his resignation. … Notably, at the time of his resignation, he was working without any special arrangement, as he had done for eighteen months.  The preference

given to Plaintiff ... was not an accommodation that enabled him to perform his job and thus, it was not required under the Act."); *see also Albright*, 135 F. App'x at 345.

> **2. Even if Plaintiff Needed an Accommodation, Plaintiff Never Made a Specific Request for a Reasonable Accommodation to Costco After December 9, 2012, Or to the Extent Plaintiff Made Any Requests for Reasonable Accommodations, Costco Acted Reasonably In Response to Such Requests.**

Even if Plaintiff needed an accommodation, Plaintiff failed to establish by a preponderance of the evidence that she made a specific request for a reasonable accommodation after December 9, 2012. Further, to the extent Plaintiff did make any requests for accommodation to Costco after December 9, 2012, Costco acted reasonably in response to Plaintiff's requests, and went above and beyond what it was legally required to do.

> **a. Plaintiff Requests that Pack be Transferred to a Different Location and that Training be Provided to All Employees.**

As stated, on November 20, 2012, Plaintiff wrote a letter to Costco's CEO informing him she was having issues communicating with Pack because he "mumbles." One day after Plaintiff wrote to Jelinek, Vice President and Regional Operations Manager Steve Powers contacted her to schedule a meeting to discuss her concerns. (Tr. Vol. II at 147:11-16.) In December 2012, Powers and Angela LiCastro, a member of Costco's Human Resources Team, traveled to Fort Lauderdale, Florida to meet with Plaintiff and investigate her concerns. (*Id.* at 147:17-148:6.) Plaintiff testified that at that meeting, she discussed her "communications issues" with Pack, asked that Pack be transferred to a different location, and asked for Costco managers and employees to be trained on deaf culture. (*Id.* at 40:22-25, 42:4-43:10, 149:17-21.) But asking for the General Manager of the store to be transferred to a different location and asking for all managers and employees at the warehouse—well over 200 individuals—to be trained on deaf culture cannot realistically be considered requests for accommodation that would help Plaintiff

perform her essential job functions. As noted above, Plaintiff testified throughout the trial that she never had an issue communicating with her managers aside from Pack and that she had no need to communicate with Pack on a day-to-day basis. (*Id.* at 38:20-21, 65:3-5.) Moreover, even though Plaintiff did not need an accommodation to perform the essential functions of her job, Costco provided alternative reasonable accommodations in the form of the VRI machines, training on deaf culture for the managers in her chain of command and on-site interpreters for large group meetings, as discussed below.

### b. *Costco Installs VRI Despite Plaintiff Not Requesting One.*

Even though Plaintiff did not ask for the VRI equipment, Costco, after exploring the best way to address Plaintiff's communication issues with Pack, installed the equipment at two locations at the warehouse. The first location where the VRI equipment was installed was the managers' office where informal coachings, counseling notices, and performance reviews typically occurred. (Tr. Vol. III at 8:24-9:10.) The second location was the pharmacy consultation room which was close to the area where Plaintiff performed her stocking in the store. (*Id.* at 9:25-10:5.) Plaintiff received training on how to utilize the VRI equipment. (Tr. Vol. II at 53:4-6.)

Plaintiff presented no evidence that the VRI was ineffective in facilitating communications between her and her managers, including Pack.[3] Plaintiff claims she did not want to use, and did not need, the VRI and that, on several occasions, she requested instead that her managers conduct their informal coaching and counseling sessions with her in writing. (Tr. Vol. III at 13:12-17, 46:14-19; Tr. Vol. II at 75:1-5, 92:17-18.) However, the fact that Plaintiff

---

[3] At one point in her testimony, Plaintiff suggested that she turned off the VRI on several occasions during a September 5, 2013 meeting with Pack, because it was not effective. (Tr. Vol. II at 81:9-19.) However, in follow-up questioning, Plaintiff made clear that her conclusion that the VRI was ineffective was based solely on the fact that Pack did not accede to her translated insistence that she did not wish to use the VRI equipment. (Tr. Vol. III at 40:8-41:14.)

preferred communications to be in writing as opposed to utilizing the VRI does not mean the VRI was not a reasonable accommodation. Under the law, Plaintiff is not entitled the accommodation of her choice, but only to a reasonable accommodation. *See Stewart*, 117 F.3d at 1285-86 ("under the ADA a qualified individual with a disability is 'not entitled to the accommodation of her choice, but only to a reasonable accommodation'") (citation omitted). Indeed, the overwhelming evidence in the record, including testimony from Dr. Shana Williams, Director of the Center for Hearing and Communication, established that the VRI was an effective tool to facilitate communication between Plaintiff and her managers during these sessions. (Tr. Vol. VI at 109:25-110:9.)

The VRI itself provides a live interpreter, albeit a remote one, and Plaintiff was offered the use of the VRI for each and every coaching and counseling session that she had with her managers. (*Id.* at 82:25-83:2, 113:6-11; Tr. Vol. IV at 21:18-24, 27:19-21, 29:19-22, 103:22-23, 112:2-4, 116:14-24, 120:25-121:6; Tr. Vol. VII at 25:9-15, 29:4-10, 35:16-21, 40:5-10, 132:4-7, 163:7-10, 165:23-25, 166:10-14.) Dr. Williams testified without contradiction that, except for large group meetings, the VRI is as effective as an on-site interpreter and that writing generally is not an effective means of communicating with a deaf individual, especially for longer, more detailed conversations. (Tr. Vol. VI at 82:22-83:2, 91:13-22, 109:18-110:9, 111:8-11.) For example, when asked to compare the VRI with an in-person interpreter, Dr. Williams testified that "they are both interpreters," and that "an on-site interpreter has the same qualifications as would a VRI interpreter." (*Id*. at 109:25-110:8.) And although she testified that it is "preferable" that an on-site in-person interpreter be used for large group meetings, she also testified that that is not mandatory and that the VRI can also be effective in group meetings, "just not as easily." (*Id.* at 109:18-22, 111:8-11.)

### c. *Costco Provides 3-Manager Team and On-Site Interpreters for Large Group Meetings.*

Costco, at Plaintiff's request, also arranged for training with the Center for Hearing and Communications in Fort Lauderdale to discuss the deaf culture and good communication practices with deaf individuals. (Tr. Vol. II at 152:3-6, 153:8-16.) Plaintiff, Powers, LiCastro, Pack, Hardlines Manager Carol Sivon, Assistant General Manager Ainsley Brown, Pharmacy Manager Jeff Weisler and acting Merchandising Manager Jorge Vallejo (essentially, everyone in Plaintiff's immediate chain of command) attended the training, which occurred on March 1, 2013. (*Id.* at 155:3-5; Tr. Vol. VI 83:6-9.) Alan Holliday, another manager with whom Plaintiff worked, did not attend the training because he had not yet transferred to the Pompano Beach location when the training was held. (Tr. Vol. VII at 20:6-7.)[4]

During the March 1, 2013 training, Dr. Williams suggested that for large group meetings such as "inventory meetings" and "warehouse meetings," Costco should consider providing Plaintiff with an on-site interpreter since the VRI is less effective in large group settings. (Tr. Vol. VI at 109:6-7, 147:6-8.) Dr. Williams also suggested that Costco designate a small group of no more than three (3) managers with whom Plaintiff was comfortable to act as the primary conduits for day-to-day directions to Plaintiff and to serve as go-to contacts for questions or concerns Plaintiff might be having at work. (*Id.* at 90:7-15.) But, as stated, Dr. Williams is the one who suggested these measures. There is no evidence in the record that Plaintiff herself ever requested or even suggested these measures as accommodations. *See Bagwell*, 2015 WL 13307343 at *9 (employer not responsible for exploring accommodations not suggested by

---

[4] Plaintiff seems to suggest that the fact that she had to interact with Holliday who did not attend the training was a violation of the FCRA. As stated, there is simply no legal obligation to provide training on deaf culture to every manager or employee who may be interacting with a deaf employee. Further, Plaintiff admits that she had no difficulty communicating with Holliday and got along well with him for at least the first several months the two worked together. (Tr. Vol. III at 13:15-19.) In fact, Holliday even knew some sign language and had a degree of familiarity with deaf culture from having grown up with a close relative who was deaf and having socialized with her and her friends in the deaf community. (Tr. Vol. VII at 21:11-14, 22:18-19, 47:15-25.)

plaintiff). There is also no evidence on the record that Plaintiff needed these accommodations to perform her essential job functions. Indeed, Plaintiff performed her job well for over 20 years without them. Thus, Costco had no duty to provide these accommodations to Plaintiff, especially in light of her insistence that she never had a communication problem with anyone besides Pack. *See Sheets*, 132 F. Supp. 2d at 1035.

In any event, it is undisputed that after the March 1, 2013 meeting, Costco agreed to provide and did provide on-site interpreters to Plaintiff for large group meetings. (Tr. Vol. IV at 95:7-12; Tr. Vol. V at 217:12-17; Tr. Vol. VII at 59:17-23.) There is no evidence on the record that Costco ever refused to provide an on-site interpreter to Plaintiff for any large group meeting held after March 1, 2013. Plaintiff claims many of the counseling sessions she attended included more than 3 individuals, suggesting that these counseling sessions should be considered "large group meetings" for which an on-site interpreter should have been provided, as opposed to the VRI. However, this argument fails for several reasons. First, Plaintiff herself admits that she refused to use the VRI in many of the instances when her managers attempted to use the VRI not because there were too many participants, but rather, because she did not need the VRI as she did not have a communication problem. (Tr. Vol. II at 68:12-13, 75:3-5; Tr. Vol. III at 13:15-19, 42:12-14; Tr. Vol. VII at 25:9-13, 35:19-21, 40:5-7, 163:7-17, 166:10-14.) In short, Plaintiff did not need an on-site interpreter during these sessions. Also, the only evidence in the record as to the purported 3-speaker maximum for effective communication through the VRI was provided by Dr. Williams, who, while suggesting that a large group might mean more than 3 people, made clear that there was no hard and fast rule in this regard. Indeed, Dr. Williams, when asked what would be considered "a group" testified that it "depends on who you ask." (Tr. Vol. VI at 109:11-13.) Finally, in the few counseling or coaching sessions where there were more than

three people present and where the VRI was actually used, the record shows that all talking at the sessions was limited to just two or three people, including Plaintiff. (Tr. Vol. IV at 111:19-112:1; Tr. Vol. VII at 36:1-5, 53:15-21, 54:9-14, 55:17-18, 56:2-16, 158:25-159:7.)[5]

Per Dr. Williams' suggestion, and even though Plaintiff never requested and never needed this arrangement to perform her essential job functions, Costco did agree after the March 1, 2013 meeting to limit certain communications with Plaintiff to a 3-manager team, which included Brown, Sivon, and Weisler. However, Dr. Williams specifically testified, *without contradiction*, that Plaintiff was informed at the meeting that the arrangement was not an excuse for her to circumvent other managers or Pack. (Tr. Vol. VI at 90:24-25, 115:22-25.) She stated that the key was to encourage more communication with managers, not to limit it. (*Id.* at 115:14-19.) Sivon also testified, *again without contradiction*, that Powers specifically asked Plaintiff in the meeting to agree that she would not refuse to take instructions or directions from other managers. (Tr. Vol. VII at 157:25-158:5.)

Plaintiff later seemed to argue that the 3-manager team arrangement meant she was not required to interact with other managers, but the evidence as to what was agreed is undisputed. Further, it simply was not reasonable for Plaintiff to expect to continue working at the warehouse without at least occasionally having to take some direction from, and to communicate and interact with, the General Manager of the store or any other managers beside the 3-person team. For instance, as numerous witnesses testified at trial, there could be shifts where none of the primary contacts, Brown, Sivon, and Weisler, were available and Plaintiff should have expected

---

[5] On March 4, 2013, Plaintiff e-mailed Powers and LiCastro with a list of interpreter agencies and claimed in the e-mail that she did not recall ever being provided an interpreter in Pompano Beach. (Tr. Vol. V at 218:7-12; DX 16.) In another e-mail to LiCastro, dated July 8, 2013, Plaintiff complained that she "never had an interpreter for 12 years." (Tr. Vol. IV at 216:12; JX 13.) To the extent these communications could be construed as requests that interpreters should be provided to Plaintiff, they came after Costco had already installed the VRI equipment and after Costco had already agreed at the March 1, 2013 meeting to provide in-person interpreters to Plaintiff for large group meetings.

that other managers working those shifts would interact with her and provide direction.  (*Id*. at 158:6-10.)

Due to Plaintiff's repeated refusal to communicate or interact with Pack, LiCastro wrote Plaintiff a letter on May 13, 2013 informing her that the 3-person arrangement was no longer feasible and that, going forward, she would be expected to communicate with and take directions from Pack.  (Tr. Vol. V at 30:14-15; DX 14.)  Despite LiCastro's letter, however, the evidence clearly showed that the 3-manager arrangement continued well beyond May 13, 2013.  For example, Plaintiff testified that during a September 22, 2013 interaction with Holliday, she screamed that she needed Carol and wanted to speak with Carol "because she is the person that I could talk to for directions and guidance and instruction on work issues."  (Tr. Vol. II at 87:9-11.)

But even if Costco did terminate the 3-manager arrangement, such an action would not violate the FCRA.  With that arrangement, Costco went above and beyond its obligations under the FCRA.  Inasmuch as the arrangement was unnecessary, unreasonable, and never specifically requested by Plaintiff, Costco had every right to terminate the arrangement if it no longer believed that it was workable.  *See Mears*, 905 F. Supp. at 1080 (no liability for failure to accommodate because "there is no indication that Plaintiff suggested this accommodation [to the employer] while she was still … employed"); *Sheets*, 132 F. Supp. 2d at 1035 ("where employer provided accommodations that exceeded those required under the ADA, 'a decision to discontinue accommodations does not give rise to liability for failure to reasonably accommodate'") (citation omitted); *Batson*, 2016 WL 4728112 at *9 ("Batson's accommodation claim also fails because she did not need an accommodation as Batson concedes that it is undisputed that she was able to perform the essential functions of her job with or without an

accommodation."). Costco was under no obligation to provide this arrangement to Plaintiff indefinitely. *See Sheets*, 132 F. Supp. 2d at 1035.

Thus, Plaintiff failed to prove by a preponderance of the evidence that (1) she needed an accommodation to perform her essential job functions; (2) she requested a specific accommodation from Costco after December 9, 2012; (3) the accommodation was reasonable; and (4) Costco failed to provide the accommodation. For these reasons, the Court should grant Costco's Rule 50(b) Motion as to Plaintiff's failure to accommodate claim under the FCRA.

### C. Plaintiff Failed to Establish by a Preponderance of the Evidence that She is Entitled to Punitive Damages.

Having failed to establish that Costco violated the FCRA, it follows *a fortiori* that Plaintiff cannot recover punitive damages. In any event, Plaintiff failed to establish the requisite evidentiary showing for an award of punitive damages. To be entitled to an award of punitive damages under the FCRA, Plaintiff must prove by a preponderance of the evidence that Costco acted with willful malice toward Plaintiff. *See Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158, 1160 (Fla. 1995); *Speedway SuperAmerica, LLC v. Dupont*, 933 So. 2d 75, 91 (Fla. 5th DCA 2006) (en banc). At trial, the jury was instructed that for Plaintiff to receive punitive damages, she must prove that Costco acted "with either malice or reckless indifference toward [her] protected rights." There is no evidence on the record to support a finding that Costco acted with any malice or reckless indifference toward Plaintiff's rights. Indeed, there is no evidence that Costco even violated her rights.

To the contrary, Costco went above and beyond what it was required to do under the law to accommodate Plaintiff's disability. The very next day after Plaintiff complained she was having issues communicating with Pack, Powers contacted Plaintiff to schedule a meeting to discuss her concerns. Shortly thereafter, Powers and LiCastro traveled to Florida from Atlanta

and Seattle, respectively, to meet with Plaintiff. Following the meeting with Plaintiff, Costco installed VRI equipment at two locations in the warehouse to help facilitate communication between Plaintiff and her managers, despite Plaintiff never making such a request. At Plaintiff's request, Costco also agreed to provide training on deaf culture to essentially every manager in her chain of command.

During the training, when Dr. Williams suggested that on-site interpreters might be more helpful to Plaintiff in large group settings, Costco agreed to provide and did provide on-site interpreters to Plaintiff during such meetings. And when Dr. Williams suggested that Costco should establish a 3-manager team to provide Plaintiff with day-to-day directions and with whom Plaintiff can discuss concerns, Costco agreed to establish the 3-manager team, although Costco also informed Plaintiff that she needed to continue to follow instructions and communicate with other managers, including Pack. In light of all these efforts by Costco to accommodate Plaintiff after simply raising concerns that she was having communications issues with Pack, there is simply no evidence on the record to support an award of punitive damages against Costco on the basis that Costco acted maliciously or with reckless indifference toward Plaintiff's rights.

**IV.    CONCLUSION**

For these reasons, Costco respectfully requests that the Court grant its Rule 50(b) Motion for Judgment as a Matter of Law.

**RULE 7.1 CERTIFICATION**

Pursuant to L.R. 7.1(a)(3), Defendant's counsel conferred with Plaintiff's counsel in a good-faith effort to resolve the issues raised in this Motion. Plaintiff's counsel advised that Plaintiff objects to Defendant's Motion.

                COSTCO WHOLESALE CORPORATION

By  <u>*/s/ Salomon Laguerre*</u>
    Jay Thornton
    Florida Bar No. 323070
    *Jay.Thornton@gray-robinson.com*
    **GRAY ROBINSON**
    401 East Las Olas Boulevard, Suite 1000
    Fort Lauderdale, Florida 33301
    Telephone: (954) 761-8111
    Facsimile: (954) 761-8112
    *Local Counsel for Defendant*

    John T. Murray (admitted *pro hac vice*)
    Georgia Bar No. 531998
    *jmurray@seyfarth.com*
    Uma Chandrasekaran (admitted *pro hac vice*)
    *uchandrasekaran@seyfarth.com*
    Salomon Laguerre
    Florida Bar No. 092470
    *slaguerre@seyfarth.com*
    **SEYFARTH SHAW LLP**
    1075 Peachtree Street, N.E., Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056
    *Counsel for Defendant*

Dated: July 13, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:15-CV-62065-WJZ

CHRISTINE D'ONOFRIO,

       Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

       Defendant.
_____/

## CERTIFICATE OF SERVICE

I certify that on July 13, 2018, I filed the foregoing **DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b)** with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the following attorneys of record:

    Chad Levy, Esq.
    **LEVY & LEVY, P.A.**
    915 Middle River Drive, Suite 518
    Fort Lauderdale, Florida 33304

    Evan R. Krakower, Esq.
    **EVAN R. KRAKOWER, P.A.**
    10061 N.E. 1st Court
    Plantation, Florida 33324

                      By */s/ Salomon Laguerre*
                          Salomon Laguerre
                          Counsel for Defendant