UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62065-CIV-ZLOCH

CHRISTINE D'ONOFRIO,

      Plaintiff,

vs.                                    **O R D E R**


COSTCO WHOLESALE CORPORATION,

      Defendant.

_____/

THIS MATTER is before the Court upon Defendant Costco Wholesale Corporation's Renewed Motion For Judgment As A Matter Of Law Under Rule 50(b) (DE 126) and Motion For New Trial And/Or Remittitur Under Rule 59 (DE 127). The Jury returned a Verdict (DE 103) on June 11, 2018, finding that Defendant Costco Wholesale Corporation (hereinafter "Defendant") failed to provide Plaintiff Christine D'Onofrio (hereinafter "Plaintiff") with reasonable accommodations after December 9, 2012, and awarding Plaintiff $750,000 to compensate her for emotional pain and mental anguish proximately caused by Defendant's denial of said reasonable accommodations, as well as $25,000 in punitive damages with respect to this same claim. The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises.

I. Background

Plaintiff initiated the above-styled cause with the filing of her Complaint (DE 1-1) in the Circuit Court of the Seventeenth

Judicial Circuit, in and for Broward County, Florida.  Defendant filed its Notice Of Removal (DE 1).  Plaintiff, a hearing impaired individual, asserted two causes of action for discrimination and retaliation pursuant to the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. (hereinafter the "FCRA").  This matter was tried before a jury on May 29-31, June 4-8, and 11, 2018.  Defendant initially made its Motion For Judgment As A Matter Of Law Under Rule 50(a) (DE 94) at the close of Plaintiff's case, and this Motion was renewed at the close of Defendant's Case.  See DE 96.  The Court denied both of Defendant's Rule 50(a) Motions.  Id.  In addition to finding that Defendant failed to provide Plaintiff with a reasonable accommodation, the Jury also found in favor of Defendant, that Defendant had not discriminated against Plaintiff by terminating Plaintiff due to her disability and that Defendant had not terminated Plaintiff in retaliation for her complaints about discrimination or request for accommodation.

Defendant argues that its instant Motion (DE 126) should be granted and judgment entered in its favor because, during the relevant time period, beginning on December 9, 2012, Plaintiff did not prove at trial, by a preponderance of the evidence, and thus, no reasonable jury could find, that Plaintiff made a specific request for accommodation, that Plaintiff needed an accommodation to perform an essential job function, or that Defendant failed to provide Plaintiff with a reasonable accommodation.

2

## II. Standard For Rule 50 and Rule 59 Motions

Federal Rule of Civil Procedure 50(b) states: "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Rule 50(c)(1) provides that, "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed.  The court must state the grounds for conditionally granting or denying the motion for a new trial."  And, pursuant to Rule 59, "The court may, on motion, grant a new trial on all or some of the issues — and to any party — as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

In evaluating the instant Renewed Motion For Judgment As A Matter Of Law Under Rule 50(b) (DE 126), the Court notes that it has considered all of the evidence and the inferences drawn therefrom in the light most favorable to the non-moving party.  If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, a motion for judgment as a matter of law should be granted.  Bishop v. City of Birmingham Police Dept., 361 F.3d 607, 609 (11th Cir. 2004) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)).  Conversely, if there is substantial

evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach different conclusions, then such motion must be denied. Id. There must be a substantial conflict in the evidence to create a jury question. A mere scintilla of evidence will not suffice. Bishop, 361 F.3d at 609 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). Moreover, the Court may not weigh the evidence or evaluate the credibility of the witnesses. Edic v. Century Prods. Co., 364 F.3d 1276, 1283 (11th Cir. 2004) (citing Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)). As the Eleventh Circuit has explained, "Under Rule 50, the 'proper analysis is squarely and narrowly focused on the sufficiency of evidence,' that is whether the evidence is 'legally sufficient to find for the party on that issue.'" Chmielewski v. City of St. Pete Beach, 890 F.3d 942, 948 (11th Cir. 2018) (quoting Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007)).

Because the Court will grant Defendant's Renewed Rule 50(b) Motion (DE 126), the Court will conditionally address, as it is required to do, Defendant's Rule 59 Motion (DE 127). In Lipphardt, the Eleventh Circuit described the applicable standard for granting a Rule 59 motion for a new trial:

> A judge should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Because it is critical that a judge does not merely substitute his judgment for that of the jury, "new trials should not be granted on

> evidentiary grounds unless, at a minimum, the verdict is
> against the great—not merely the greater—weight of the
> evidence."

267 F.3d at 1186 (quoting Hewitt v. B.F. Goodrich Co., 732 F.2d
1554, 1556 (11th Cir. 1984)).  There is a significant distinction
between the standard applied in evaluating a Rule 50 motion and a
Rule 59 motion: "'Although a trial judge cannot weigh the evidence
when confronted with a motion (for judgment) notwithstanding the
verdict [a Rule 50(b) motion for judgment as a matter of law], in
a motion for a new trial the judge is free to weigh the evidence.'"
Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir. 1982)
(quoting Rabun v. Kimberly-Clark Corp., 678 F.2d 1053, 1060 (11th
Cir. 1982)(citing King v. Exxon Co., 618 F.2d 1111, 1115 (5th Cir.
1980))).

### III. Analysis

Plaintiff brings all of her claims, including the failure to
accommodate claim, pursuant to the FCRA.  "[D]isability-
discrimination claims under the FCRA are analyzed using the same
framework as ADA claims."  Holly v. Clairson Indus., LLC, 492 F.3d
1247, 1255 (11th Cir. 2007)(citing D'Angelo v. ConAgra Foods, Inc.,
422 F.3d 1220, 1224 n.2 (11th Cir. 2005)).  The Americans With
Disabilities Act, 42 U.S.C. § 12101, et seq. (hereinafter "ADA"),
prohibits an employer from discriminating against an employee on
the basis of disability.  It reads, in pertinent part:

> No covered entity shall discriminate against a qualified
> individual on the basis of disability in regard to job

>application procedures, the hiring, advancement, or
>discharge of employees, employee compensation, job
>training, and other terms, conditions, and privileges of
>employment.

42 U.S.C. § 12112(a). The elements of a prima facie case of discrimination are: (1) Plaintiff is disabled; (2) Plaintiff is a 'qualified individual,' as referenced above, within the meaning of the ADA, which means that Plaintiff "could perform the essential functions of the job in question with or without reasonable accommodations"; and (3) Defendant discriminated against Plaintiff because of the disability. <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1255 (11th Cir. 2001) (<u>citing</u> <u>Reed v. Heil Co.</u>, 206 F.3d 1055, 1061 (11th Cir. 2000)). Under the ADA, "an employer's failure to reasonably accommodate a disabled individual <u>itself</u> constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship. <u>Holly</u>, 492 F.3d at 1262 (emphasis in original). Here, the relevant provision states that among the definitions of discrimination in 42 U.S.C. § 12112(a) is:

>not making reasonable accommodations to the known
>physical or mental limitations of an otherwise qualified
>individual with a disability who is an applicant or
>employee, unless such covered entity can demonstrate that
>the accommodation would impose an undue hardship on the
>operation of the business of such covered entity

<u>Id.</u> at § 12112(b)(5)(A). The ADA defines a reasonable accommodation:

>(A) making existing facilities used by employees readily
>accessible to and usable by individuals with

disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

Id. at § 12111(9)(A)-(B). An accommodation is reasonable, and hence required by the ADA, "only if it enables the employee to perform the essential functions of the job." Lucas, 257 F.3d at 1255. See also Williams v. Revco Discount Drug Centers, Inc., 552 Fed. App'x 919, 921-22 (11th Cir. 2014) (explaining the standard for succeeding on a reasonable accommodation claim in the same way). The mere fact that an accommodation appears in the definition's list does not mean that the particular accommodation is reasonable for the particular Plaintiff. Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998). This inquiry is carried out within the context of specific circumstances. Id. (citing Wernick v. Federal Reserve, 91 F.3d 379, 385 (2d Cir. 1996)).

Before Defendant has a duty to provide such an accommodation, Plaintiff must make a specific request. See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) (citing Wood v. President and Trustees of Spring Hill College in the City of Mobile, 978 F.2d 1214, 1222 (11th Cir. 1992) ("[O]ur holding in Wood that the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been

made, is binding precedent for purposes of defining the scope of the duty to provide a reasonable accommodation under the ADA."). Plaintiff must make a request, but the Eleventh Circuit has favorably cited, very recently, a Tenth Circuit case which held that the employee "'need not use magic words,' but 'should provide enough information about his or her limitations and desires'" in that case, relating to job reassignment. <u>Adigun v. Express Scripts, Inc.</u>, No. 17-15225, 2018 WL 3752403, at *2 (11th Cir. Aug. 7, 2018) (<u>quoting</u> <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154, 1172 (10th Cir. 1999)). Some courts have even indicated that there are situations in which a plaintiff's need is "sufficiently obvious" that a defendant may be on notice even without a specific request. <u>See, e.g.</u>, <u>Jacobson v. City of West Palm Beach</u>, No. 16-cv-81638-MIDDLEBROOKS, 2017 WL 6366841, at *7 (S.D. Fla. May 16, 2017); <u>McCullum v. Orlando Regional Healthcare System, Inc.</u>, No. 6:11-cv-1387-Orl-31GJK, 2013 WL 1212860, at *4 (M.D. Fla. Mar. 25, 2013) (<u>citing</u> <u>Robertson v. Las Animas County Sheriff's Dep't</u>, 500 F.3d 1185, 1197 (10th Cir. 2007); <u>Taylor v. Principal Financial Group, Inc.</u>, 93 F.3d 155, 164 (5th Cir. 1996)).

Sufficient evidence in the record supports a finding that Plaintiff made a request, which was specific enough that Defendant understood her need for accommodation. Plaintiff testified that Alan Pack became the General Manager at the Pompano Beach location in 2012. DE 117 at 34:6-11. Because she had difficulty

communicating with Mr. Pack, she sent a letter to Defendant's President and Chief Executive Officer Craig Jelinek. See DE 117 at 38:3-6. This November 20, 2012 letter (Joint Exh. 31, DE 99-43) makes clear that Plaintiff is "a born deaf person," and that she is having a communication problem, even if her articulation of this communication problem focuses on her relationship with Mr. Pack: "I have always been able to communicate with my managers. I am a lip reader and can speak well, however, Mr. Pact [sic] mumbles when he talks so I asked him to please write down what he was saying to me. Not only did he refuse, but his attitude towards me was very disrespectful and sarcastic." Joint Exh. 31, DE 99-43. The letter itself was sent prior to the December 2012 time period; however, in response to this letter, Defendant initiated a meeting with Plaintiff to discuss her concerns, which took placed within the applicable time period on December 12, 2012. DE 117 at 41:12. Plaintiff describes this meeting with Steve Powers, Regional Vice President, and Angela LiCastro, from Defendant's Human Resources Department: "We had a meeting to discuss what had happened with this letter. . . . We talked about the communication issues. . . . I just simply recommended — I just made a friendly recommendation if they were able to move Pack to another warehouse." DE 117 at 40:20-25. When Plaintiff was asked about other recommendations that arose from the discussion at the meeting, she explained that the Video Remote Interpreting (hereinafter "VRI") phone was

mentioned, but to her mind, not fully explained.  See DE 117 at 42:4-15.  And, Plaintiff says she recommended training, but that Defendant said that they could not do that.  Id.  She acknowledges that later, Defendant agreed to provide the training, and that she had a positive response to this development.  See DE 117 at 43:11-24.

From the December 2012 meeting, Mr. Powers testified that there were "two takeaways": "Apparently [Mr. Pack] mumbles, and she wasn't able to read his lips.  So that's a big problem if she can't understand the general manager.  And the other thing that came out of the meeting, my takeaway, was that [Plaintiff] felt very strongly that Costco just didn't understand the deaf culture. . . . Again, the two takeaways that I remember were lack of communication and that we needed to do a better job of educating Costco on the deaf culture."  DE 120 at 191:4-21.  When asked about the result of the meeting and if Plaintiff required accommodations, Ms. LiCastro responded: "That we were looking into different things.  She hadn't requested anything.  We were just trying to find different ways to improve communication."  DE 120 at 22:22-24.  Ms. LiCastro again stated that, "I felt that the communication problem she was having was unique to her and Mr. Pack," rather than "unique to deaf people."  DE 120 at 36:21-24.  But, Ms. LiCastro also affirmatively answered the question: "So is it fair to say at the December meeting, you acknowledge that [Plaintiff] had a need

for special accommodation?"  DE 119 at 223:13-16.

While the testimony of Plaintiff agrees with that of Mr. Powers and Ms. LiCastro, that Plaintiff primarily struggled with communicating with Mr. Pack, a reasonable jury could find that Plaintiff's request for accommodation was specific enough as to communicate that her deafness caused communication problems, even if these communication problems primarily arose between herself and her general manager.  Defendant was aware of her deafness, began an interactive process with Plaintiff that was cognizant of this disability, and took measures consistent with this understanding, that being deaf posed communication difficulties.  Plaintiff indicated specifically enough that the problem, at least to some extent, went beyond Mr. Pack through her comments about the deaf culture and her recommendation of training, a recommendation upon which Defendant ultimately acted.

Sufficient evidence in the record also supports a finding that communication, and specifically communication with her general manager, was essential to Plaintiff's job function.  There was no testimony that Plaintiff needed any accommodation to actually undertake the actions to perform any of her daily tasks.  As detailed above, Plaintiff's need as understood by both herself and Mr. Powers and Ms. LiCastro was related to communication. Specifically, she had difficulty communicating with Mr. Pack. Plaintiff herself admitted that she had from 15 to 20 managers at

her former location in Davie and that she did not have trouble communicating with any of these managers. See DE 117 at 11:2-5. And, at the Pompano Beach location, where she estimated she had 20 to 25 managers, she again stated, that until 2011, she did not have any trouble communicating with a manager. See DE 117 at 22:19-23. Plaintiff described her communication with Mr. Pack, which prompted her to write the letter quoted above: "Because Pack refused to communicate with me. He would mumble. I couldn't understand him. And he would say to me why are you always moving your hands in the air. Can't you lip read. It was very rude. It was very sarcastic, and it was very hurtful. I also told him that I have always been able to communicate with all of my other managers, but I am not able to communicate with him. He refuses to even write to me." DE 117 at 38:15-22. Plaintiff stated that she did not ask for the VRI and that she did not have a problem communicating and did not need the VRI. See DE 117 at 68:10-13. But at the same time, she also testified that she did not need the VRI because she could communicate by writing back and forth. Id. at 68:17-20.

Because courts generally defer to employers in framing the essential functions of a job, the Court finds Defendant's employees' statements highly relevant in determining that a reasonable jury certainly could have concluded that communicating with Mr. Pack was essential to Plaintiff's position. As to this point, Plaintiff's past job performance, particularly outside of

the relevant time period, is not determinative.  The testimony of Plaintiff and Ms. LiCastro agree as to a conversation they had in which Plaintiff stated that she refused to communicate with Mr. Pack, and Ms. LiCastro informed Plaintiff that she could be disciplined for not communicating with the general manager.  See DE 117 at 55:16-24; DE 120 at 5:3-6.  Admittedly, this conversation makes a slightly different point than whether communication with Mr. Pack was essential to Plaintiff's job.  But the consistency with which all of Defendant's employees in leadership positions state that Plaintiff was not excused from communicating with her general manager indicate that Defendant is incorrect in its argument that no reasonable jury could find this communication to be essential to the job.  On this point, Mr. Powers answers, "He's the general manager.  She's the employee.  I think that if [Mr. Pack] needs to communicate with her, then he should be able to communicate with her."  DE 120 at 215:18-23.  Ms. LiCastro testified that one of the problems with maintaining the three-person communication team, which will be discussed in more detail below, was that Plaintiff was not communicating with her general manager.  DE 120 at 48:5-10.  And again, as to this same point, Mr. Powers's testimony is consistent with Ms. LiCastro's: "[W]e needed to make sure that she understood that she needed to continue to communicate with Mr. Pack."  DE 121 at 4:20-21.

As has been discussed above, the Court will not here find that

no reasonable jury could have found for Plaintiff as to whether Plaintiff's request was specific enough, or whether communicating with Mr. Pack was actually essential to Plaintiff's job. Nevertheless, the Court here finds that no reasonable jury could find that Defendant did not provide a reasonable accommodation to Plaintiff. At least within the applicable time period, beginning in December of 2012 and continuing up to Plaintiff's termination, Defendant provided accommodations which were reasonable. While the accommodation provided must be reasonable, this requirement does not mean that the accommodation must be in the exact form in which Plaintiff asks or wishes to be accommodated. See Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1451 (11th Cir. 1998) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997) ("In making this determination, we do not ask whether an employer has made all accommodations it feels are appropriate, or whether an employer has made all the accommodations that a disabled plaintiff desires. Instead, we decide whether a requested accommodation 'would impose an undue hardship on the employer.'")). The court in Stewart was at pains to make clear that the concept of a reasonable accommodation does not mean that a disabled individual is entitled to choose how an employer accommodates her disability. 117 F.3d at 1285-86. See also Shepard v. United Parcel Service, Inc., 470 Fed. App'x 726, 730 (11th Cir. 2012) (citing Stewart, 117 F.3d at 1285) (further

14

citations omitted); <u>Matthews v. Village Center Community Development Dist.</u>, No. 5:05-cv-344-Oc-10GRJ, 2006 WL 3422416, at *15 (M.D. Fla. Nov., 28, 2006) ("Although this may not have been [Plaintiff's] preferred accommodation, the ADA (and in turn the FCRA) does not require that [Defendant] accommodate [Plaintiff] in any way she sees fit."). Certainly, an employer is not legally required to provide the 'maximum' accommodation or 'every conceivable' accommodation. <u>Stewart</u>, 117 F.3d at 1285 (<u>quoting Lewis v. Zilog</u>, 908 F. Supp. 931, 947 (N.D. Ga. 1995)). In <u>Santandreu v. Miami-Dade County</u>, the district court explored a process through which an employer might be obligated to seek 'technical assistance' in order to identify an appropriate accommodation, but still concluded, "It is then the employer's decision, with the individual's preference considered, as to which accommodation is most appropriate." 10-24616-CIV-ALTONAGA, 2011 WL 13136161, at *10 (S.D. Fla. Aug. 1, 2011). This case also specifically noted that, "A transfer from an incompatible supervisor is not a 'reasonable accommodation.'" <u>Id.</u> at *11 (<u>citing</u> <u>Gaul v. Lucent Techs., Inc.</u>, 134 F.3d 576, 581 (3d Cir. 1998). Further, "[T]he employer may chose the least expensive accommodation or the accommodation that is easiest for the employer to provide." <u>Sheets v. Florida East Coast Railway Co.</u>, 132 F. Supp. 2d 1031, 1035 (S.D. Fla. 2001) (<u>citing</u> <u>Hankins v. The Gap, Inc.</u>, 84 F.3d 797, 800 (6th Cir. 1996)). And, the court in

Holbrook v. City of Alpharetta explained that even if an employer offered an accommodation which "exceeded that which the law requires" in the past, doing so does not bind the employer to offer that accommodation in perpetuity.  112 F.3d 1522, 1528 (11th Cir. 1997).

The cases discussing failure to accommodate claims take great care in explaining the Parties' respective burdens of persuasion. The Eleventh Circuit has held that, "The plaintiff retains at all times the burden of persuading the jury that reasonable accommodations were available," and, "The employer, on the other hand, has the burden of persuasion on whether an accommodation would impose an undue hardship."  Holbrook, 112 F.3d at 1526 (citing Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir. 1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1183 (6th Cir. 1996)).  But, an employer is not required to demonstrate that there is an undue hardship until an employee has shown that a reasonable accommodation exists.  Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (citing Willis v. Conopco, Inc., 108 F.3d 282, 286 (11th Cir. 1997)).  In defining the plaintiff's burden, the court in Stewart described two aspects: "the burden of identifying an accommodation that would allow a qualified individual to perform the job," and "the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."  117 F.3d at 1286 (citing Willis v.

Conopco, 108 F.3d 282, 283 (11th Cir. 1997)).  In Tate v. Potter, the district court applied the law about the burdens, and concluded, "Thus, where the employer has already offered a reasonable accommodation, the statutory inquiry is at an end.  The employer need not further show that the employee's suggested or alternative accommodations would result in undue hardship."  04-61509-CIV-JORDAN, 2008 WL 11400757, at *4 (S.D. Fla. Mar. 25, 2008).

As cited above, the primary accommodations offered to Plaintiff were the VRI and training on the deaf culture, which took place at the Center for Hearing and Communication.  See DE 121 at 83:3-9.  Additionally, Defendant at times, such as for group meetings, provided an on-site interpreter.  See DE 117 at 68:24-69:5.  It is apparent in the evidence that the accommodations Defendant provided were not the accommodations Plaintiff desired.  First, at her December 2012 meeting with Mr. Powers and Ms. LiCastro, Plaintiff testified that she "didn't understand why they were asking me about getting a video phone."  DE 117 at 42:8-9.  Plaintiff admits briefly that the video phone was "good," before explaining her reaction to this accommodation with a story, unrelated at least to the failure to accommodate claim, about an interaction she had with Mr. Pack when they had a misunderstanding about the break room in which the phone was installed.  See DE 117 at 53:25-54:6.  Plaintiff later explains her reaction to the phone,

"But I didn't even ask for a video phone, so I didn't understand why it was there.  They just put it in.  They set up VRI, and I'm thinking, I don't have a communication problem, what do we need this for."  DE 117 at 68:10-13.

Another issue with respect to the VRI that arose in the testimony of multiple witnesses was the number of people who were present for meetings, typically counseling sessions, in which the VRI phones were used.  Dr. Shana Williams, a director of mental health with the Center for Hearing and Communication, who was involved with the training sessions and additional meetings with Plaintiff and Mr. Pack, testified, albeit not as an expert, that she thought that the VRI was effective and based on her observation, was set up at the Pompano Beach store in a manner that would be effective.  DE 120 at 82:19-25.  She stated that both VRI and on-site interpreters are one-on-one, but because a VRI phone is stationary, an on-site interpreter would be recommended for a group meeting.  DE 121 at 89:12-22; 109:6-10.  Dr. Williams was asked, "And from your understanding, if it's three or more people in a meeting, that meeting must have an actual on-site interpreter," to which she answered, "I'm saying that that is preferable.  There are places where an on-site interpreter is really mandatory, for example, when a woman is giving birth and you really have to have an on-site interpreter.  And then there's less critical situations."  DE 121 at 109:15-22.  Plaintiff testified that,

18

during counseling sessions, "When I used the VRI, it was always more than three people in the office. They would not give me an on-site interpreter." DE 117 at 76:5-7.  Mr. Pack confirms that the VRI, not an on-site interpreter, was used as the counseling sessions.  DE 118 at 173:12-18.  He also testified that the additional person at a counseling session is primarily observing and not necessarily taking part in the conversation.  DE 119 at 111:22-24.  When asked if there were instances in which the VRI was used with four or more people in the room, Alan Holliday, a manager who worked with Plaintiff, responded, "Not using the machine.  When there were others in the room, they were witnesses."  DE 122 at 53:20-21.  And, the testimony of Carol Sivan, another manager who worked with Plaintiff, agreed with that of Mr. Pack and Mr. Holliday, that as a witness in a counseling sessions, "You just sit there and observe and make sure that nothing wrong is happening." DE 122 at 159:4-7.  But, regardless of whether or not an on-site interpreter would have been a better accommodation, and there was no witness who was offered as an expert who so testified; indeed, there is no testimony from any witness which could meet the burden of establishing that this accommodation was not reasonable.  No reasonable jury could find that a reasonable accommodation was not offered.  Plaintiff's evidence proffers no reasons why VRI is not a reasonable accommodation; instead, Plaintiff's testimony focused on her preferences and the reasons that she did not agree with

Defendant's choice.  The law does not dictate that an employer is required to provide the maximum possible or most expensive accommodation.

With respect to an additional accommodation, several witnesses testified about a recommendation from the Center for Hearing and Communication that Defendant provide what was described as a communication team, by which Plaintiff could limit the number of people from whom she received directions.  Defendant was not required to provide this accommodation.  Thus, it was free to discontinue its use.  Dr. Williams confirmed that the purpose of this recommendation was "to decrease the number of people coming at [Plaintiff] with information and directions."  DE 121 at 113:16-17.  But, she also unequivocally stated that it was supposed to be used, "not circumventing other needed communications."  DE 121 at 114:3.  Plaintiff also testified that when this accommodation was discussed at the March 1, 2013 training: "So first [Dr. Williams] asked me who I wanted to communicate with.  And I said I'm fine with everyone.  Again, my job is to communicate with everybody.  But [Dr. Williams] went ahead and picked three people out of the audience."  DE 117 at 60:19-21.  By Plaintiff's own account, she did not need this accommodation to perform her job.  Mr. Pack also testified that he saw the three people as "three points of contact to try to limit the communication, but that doesn't mean that [Plaintiff didn't] talk to everybody."  DE 120 at 230:24-231:1.

When Ms. LiCastro described this accommodation she stated, "I think there is a group of managers that were going to be her direct reports but that any manager could still provide guidance to her." DE 120 at 27:12-14.  Ms. LiCastro wrote the May 13, 2013 letter that informed Plaintiff that, "[D]uring the March 1 meeting, [the three individuals] were the designated managers assigned to address any issues, changes or direction given to you, as a temporary solution.   This  solution  cannot  realistically  continue." Defendant's Exh. 14 (introduced by Plaintiff) (DE 99-11).  Ms. Licastro's letter informed Plaintiff that she would be required to communicate with Mr. Pack.  Id.  During her testimony, Ms. LiCastro stated that Plaintiff's resistance to communicating with Mr. Pack was the issue with the communication team.  DE 120 at 48:9-10. When Mr. Pack was asked about the removal of this communication team, he explained that they were not being "disband[ed]," but, "What we were telling her is that these aren't the ones that you are going to talk to exclusively all the time."  DE 120 at 234:15-18.  Ms. Sivan, who was one of the members of the communication team, likewise testified that Mr. Powers explained her role and that "[the communication team] didn't give [Plaintiff] the right to not accept any other manager coming and approaching her for directions or anything that was work related."  DE 122 at 178:14-16.  The argument that the discontinuation of this team, to the extent it was ever intended to be exclusive, which all of the

21

employees of Defendant who were involved deny, and which Plaintiff does not rebut, is a red herring.  Defendant was not required to provide this particular accommodation.  Thus, Defendant cannot be said to fail to comply with the law when it removes an accommodation that is not legally mandated.  A defendant is free to try different methods for providing an employee accommodations.  The law merely requires that the accommodation provided be reasonable.  Defendant was not being unreasonable to discontinue the use of an additional accommodation that it believed was interfering with Plaintiff's ability to function in the workplace.

Yet another aspect of providing a reasonable accommodation that courts have discussed is the interactive process between employees and employers in which they try to reach a solution for accommodating a disability which has been brought to the employer's attention.  In the Stewart case, the court found fault with the employee for not engaging with the employer in this process.  117 F.3d at 1286-87.  The court explained that it was inappropriate for the employee to demand that her own suggestions be followed without even attempting to explain why the employer's proffered accommodations were not reasonable.  Id.  Employees cannot cause the process to breakdown and prevail on a failure to accommodate claim:

> Liability simply cannot arise under the ADA when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the

        information it possesses; and the employee's actions cause a breakdown in the interactive process.

Id. at 1286 (further citations omitted).  See also Gilliard v. Georgia Dep't of Corr., 500 Fed. App'x 860, 868 (11th Cir. 2012).

        It is also apparent that breakdowns in the use of both of the primary accommodations were due, at least in part, to Plaintiff's unwillingness to engage.  In particular, both Plaintiff and employees of Defendant agree in their testimony that it was Plaintiff who would repeatedly, sometimes more than one time within a given meeting, hang up the VRI phone, or even, request not to use the phone.  After receiving the first in the series of Employee Counseling Notices (hereinafter "ECN") which more immediately preceded her termination, Plaintiff describes a meeting with Mr. Pack, in which she asked if he would write to her, and she testifies that he insisted that they use the VRI.  See DE 117 at 81:3-8.  She admits that she hung up the phone two times because Mr. Pack, "was very combative," and "was trying to control the interpreter and tell them what to do."  DE 117 at 81:12, 15-16. See also DE 118 at 12:20-24.  Plaintiff also agrees that she hung up the VRI phone in a meeting with Mr. Holliday.  DE 118 at 39:15-17.  And, Mr. Holliday confirmed this: "I attempted to start the VRI, and [Plaintiff] ended the call before it connected."  DE 122 at 25:9-10.  Mr. Holliday also testified at least on that instance, on August 30, 2013, he was ultimately able to use the VRI to communicate with Plaintiff.  See DE 122 at 25:14-15.  Mr. Holliday

testified about a September 22, 2013 meeting where Plaintiff refused to use the VRI so another manager, Ainsley Brown, wrote for her instead.  See DE 122 at 35:19-21.  Ms. Sivan's testimony similarly describes Plaintiff's resistance to the VRI and preference for writing, to which Defendant's employees sometimes deferred.  See DE 122 at 163:13-17; 166:17-21.  At a September 5, 2013 meeting with Mr. Pack, Plaintiff says that she did not want to use the VRI, that she wanted Mr. Pack to write to her instead.  DE 118 at 40:11-15.  Again, in the midst of describing her many complaints with Mr. Pack and his treatment of her, Plaintiff states that she hung up the VRI, and again, she admits she hung it up two times.  DE 118 at 42:12-22.  Mr. Pack's testimony is consistent with Plaintiff's testimony, in that he also remembered her hanging up the VRI phone on September 5, 2013.  See DE 119 at 25:16-22; 29:19-22; 117:22-24.  Plaintiff testified that later that day, after the failed VRI conversation, Mr. Pack agreed to write back and forth.  DE 118 at 44:2-4.  Certainly, Plaintiff's testimony reveals that the relationship between Plaintiff and Mr. Pack was fraught with many difficulties.  But the question before the jury, with respect to the claim at issue, and now, before the Court, is whether VRI, among other accommodations, is a reasonable accommodation by which Defendant could seek to fulfill its legal obligation to a disabled employee.  Nothing in Plaintiff's testimony indicates that there was any deficiency in the actual

accommodation, even if there were many interpersonal conflicts in the relationship between Plaintiff and Mr. Pack. The fact remains that Plaintiff frequently obstructed the use of the accommodation Defendant provided. Her obstruction of this accommodation is not evidence that the accommodation itself was not reasonable.

In addition to resisting the accommodation of the VRI provided by Defendant, another example of Plaintiff not participating in attempts Defendant made to improve communication between Plaintiff and Mr. Pack was that she refused to attend additional recommended meetings. Dr. Williams discussed these proposed meetings between Plaintiff and Mr. Pack as one of the solutions which arose out of the March 1, 2013 training session. DE 121 at 86:17-87:1. Dr. Williams testified that while Plaintiff was initially amenable to the meetings, she ultimately refused to meet with Mr. Pack even though she did have two meetings individually with Dr. Williams. DE 121 at 87:8-16. Dr. Williams also had two meetings with Mr. Pack individually. DE 121 at 87:17-23. Mr. Pack similarly testified about the recommendation of these meetings, and that Plaintiff refused to meet with Dr. Williams and him in meetings which would be scheduled with the three of them. DE 119 at 50:24-51:4. Ms. LiCastro also testified that Plaintiff was unwilling to meet with Dr. Williams and Mr. Pack. DE 120 at 104:24.

An on-site interpreter would have been another possible way for Defendant to accommodate Plaintiff, but as the case law makes

clear, as long as Defendant provides a reasonable option, the accommodation does not have to be Plaintiff's choice, and it does not have to be the maximum or most expensive option.  The record in this case is utterly devoid of any testimony that the VRI did not function adequately.  Plaintiff did not like using the VRI and preferred an on-site interpreter.  Or, she preferred her supervisors to write to her, and there is some testimony and evidence, that, at times they attempted to accommodate this preference.  But, Plaintiff cannot hang up on video phone interpreters, repeatedly, and then claim that Defendant is not accommodating her disability.  That conclusion is not permissible under the existing body of cases interpreting this requirement of the ADA, and by extension the FCRA.  In fact, the evidence supports the conclusion that Plaintiff was obstructing the reasonable accommodation which Defendant was providing.

For all of the reasons provided herein, and recognizing the applicable standard, because the Court has found that no reasonable jury could have found in favor of Plaintiff on her failure to accommodate claim, the Court also finds that the clear weight of the evidence——that is the great and not merely the greater weight of evidence——is against the Verdict (DE 103) rendered herein. Thus, the Court will conditionally grant Defendant's Motion For New Trial And/Or Remittitur Under Rule 59 (DE 127), in the event that the grant of Defendant's Renewed Motion For Judgment As A Matter Of

Law Under Rule 50(b) (DE 126) is reversed on appeal.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that

1. Defendant's Renewed Motion For Judgment As A Matter Of Law Under Rule 50(b) (DE 126) be and the same is hereby **GRANTED;**

2. Pursuant to Rules 58(a)(1), no separate judgment in favor of Defendant will be entered, and this Order will constitute judgment in favor of Defendant Costco Whole Corporation as to Plaintiff's claim for failure to accommodate; and

3. Pursuant to Rule 50(c), Defendant's Motion For New Trial And/Or Remittitur Under Rule 59 (DE 127) be and the same is hereby **conditionally GRANTED** if the Final Judgment herein is later vacated or reversed on appeal.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____29th_____ day of January, 2019.

                                          WILLIAM J. ZLOCH
                                          Sr. United States District Judge

Copies furnished:

All Counsel of Record

27